# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
October 23, 2012 Session

## STATE OF TENNESSEE v. CHRISTOPHER BURRESS

**Appeal from the Criminal Court for Hamilton County**
**No. 278822   Don W. Poole, Judge**

_____

**No. E2012-00861-CCA-R3-CD-FILED-MARCH 18, 2013**

_____

The Defendant, Christopher Burress, appeals the Hamilton County Criminal Court's order revoking his probation for his two convictions for facilitation of aggravated robbery and ordering him to serve his effective six-year sentence. On appeal, he contends that the trial court erred in (1) denying his motion to suppress evidence obtained as a result of a search of his person, (2) finding that he violated his probation by resisting arrest, (3) revoking his probation, and (4) ordering him to serve the sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Joseph Bartlett Underwood, Jr., Chattanooga, Tennessee, for the Defendant, Christopher Burress.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William H. Cox, III, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant pleaded guilty on July 27, 2011, and pursuant to his plea agreement, he was sentenced to six years' intensive probation. In December 2011, a revocation warrant was filed, which alleged that he violated the terms of his probation by failing to provide proof of employment, failing to report as required, testing positive for marijuana, failing to pay fines, court costs and fees, failing to provide a DNA sample, and being a member of a

criminal street gang. An addendum to the revocation warrant was filed in March 2012, which alleged that the Defendant violated the law and failed to report his arrest.

At the revocation hearing, Probation Officer Terry Steele testified that he was assigned in October 2011 to supervise the Defendant's intensive probation. He said that he went to the Defendant's home twice after he was assigned to the Defendant's case but that the Defendant was not home. He said that on the first visit, he gave his business card to one of the Defendant's friends and asked that the friend tell the Defendant to call him. He said that on the second visit, he told the Defendant's mother that he needed to make contact with the Defendant. He said that the Defendant's mother told him the Defendant would be in Mr. Steele's office the next day but that the Defendant did not appear.

Mr. Steele testified that the Defendant's previous probation officer gave the Defendant a drug test that was positive for marijuana. The Defendant signed a form admitting that he had smoked marijuana recently or that the test results were accurate. He said the Defendant would have been advised at his intake interview of the requirement to give a DNA specimen, that the Defendant initialed the rule requiring the DNA specimen, and that the Defendant did not provide a specimen. He said the Chattanooga Police Department's security threat group list contained the Defendant's name. He did not know how the police department obtained its information. He said the Defendant pleaded guilty to criminal trespass on October 4, 2011, and to failure to appear on December 19, 2011. He said the Defendant had two pending charges for possession of a controlled substance and evading arrest.

On cross-examination, Mr. Steele testified that the Defendant reported to the previous probation officer and that the Defendant did not have any positive drug tests until October 2011. He said that the Defendant's intensive probation required that the Defendant remain at home from 6:00 p.m. until 6:00 a.m. He said that on September 13, 2011, the Defendant provided a list of potential employers he contacted regarding employment. He said that although he went to the Defendant's home, he never sent the Defendant any letters.

Chattanooga Police Officer Andrew Peaker testified that on October 10, 2011, he responded to a call regarding a possible shooting. He said that when he arrived at the scene, there were many people in the front yard who began to scatter. He said he chased some of them and yelled for them to stop. He said that five or six men ran into a house and slammed and locked a door. He said the owner arrived about thirty minutes later and advised them that the people should not be in her house. He said they went inside and secured the house at the owner's request. He said the Defendant was one of the people inside the house. He said he charged the Defendant with evading arrest at 7:50 p.m.

On cross-examination, Officer Peaker testified that when he arrived at the scene, the police did not know what was going on and had no information the Defendant was the shooter. He said the Defendant was not under arrest when he arrived. He said the Defendant was not the owner. He said the Defendant did not come out for about one-half an hour until the owner arrived but was never arrested in connection with the shooting.

Chattanooga Police Officer Earnest Fielden testified that he encountered the Defendant when he was on duty between 3:00 p.m. and 6:00 p.m. on September 3, 2011. He said the Defendant was standing on the corner of a sidewalk at an address where there had been previous problems. He said that "[w]ithin this month we have seized narcotics, I seized narcotics, and there was a firearm retrieved from [the address] where he stays." He said that Jumoke Johnson also lived at the house and that Mr. Johnson's brother was with the Defendant and two unidentified men on the sidewalk. He said that when he arrived, the Defendant was "posted up." When asked to describe what he meant, he said there were numerous complaints about drug sales and gang activity on the street. He said that people stood on the street corner in order to wave down motorists and sell them drugs. He said the Defendant was on the corner. He said that the Defendant looked around as if he were going to run and that the other people kept walking on the sidewalk. He said that he knew from previous encounters that the Defendant was violent and might have weapons. He said he previously detained the Defendant for aggravated robbery. He said that he ordered the Defendant to go to the hood of his patrol car but that the Defendant ran to the back of the car. He said he chased the Defendant and took out his Taser and that the Defendant said, "okay, okay" and complied. He said that the Defendant put his hands on the car's hood, that he frisked the Defendant for weapons, that he felt what he recognized as two individually wrapped bags of marijuana in the Defendant's open cargo pants pocket. He said he could see into the pocket and identified the marijuana by sight. He said he asked the Defendant if the pocket's contents were why the Defendant was about to run. He said the Defendant responded, "Yes, I've got two baggies of just loud and voodoo, referring to the marijuana. He charged the Defendant with possession of marijuana and thought the case was still pending.

On cross-examination, Officer Fielden testified that he knew the Defendant was on probation for the previous robbery conviction. He said the Defendant was impeding the flow of foot traffic on the sidewalk. He said there were two people walking at the time and that in that part of town during daytime, "everybody walks." He said there was a green Pontiac at the sidewalk. He said he did a pat-down of the Defendant because of his recent interactions with him and the Defendant's gang ties and because he did not know if the Defendant had a weapon. He said that nothing that day caused him to suspect the Defendant had a weapon. He said that he knew who the Defendant was and that the Defendant had weapons previously. He said that impeding the flow of traffic was a violation of a city

ordinance. He agreed that he saw the marijuana in the Defendant's pants pocket after he told the Defendant to stop and seized the Defendant.

On redirect examination, Officer Fielden testified that his prior encounters with the Defendant included the aggravated robbery arrest and "multiple knock and talks" at a house in which the Defendant was present. He said that over sixteen grams of crack cocaine were seized from the house a short time before September 3, 2011. He said that when the cocaine was seized, the Defendant, Juwana Cooper, and Jumoke Johnson were present. He said another police officer and a probation officer accompanied him when the cocaine was seized. On redirect examination, Officer Fielden stated that the Defendant was not charged with a crime as a result of the knock-and-talk encounters.

Deante Burris testified for the Defendant that she was the Defendant's mother. She said the Defendant had lived with her for the past three months. She said that if the Defendant's probation was not revoked, he would live with her father. On cross-examination, Ms. Burris stated that Jumoke lived at the house about which the State's witnesses testified but that the Defendant did not.

Charles Sprawling, Sr., the Defendant's grandfather, testified that if the Defendant's probation was not revoked, the Defendant could live with him in Georgia. He said his son's employer was willing to give the Defendant a janitorial job.

After receiving the proof, the trial court found "overwhelming proof" that the Defendant violated the terms of his probation. The court found that the Defendant failed to report after October 4, 2011, despite two home visits by the probation officer attempting to make contact, that the Defendant tested positive for marijuana, that the Defendant failed to give a DNA specimen, and that the Defendant violated the law as evidenced by his guilty pleas to criminal trespass and failure to appear. The court also found that the Defendant evaded arrest when Officer Peaker attempted to talk to and investigate people at the scene of the shooting. The court noted that Officer Peaker told the Defendant to stop but that the Defendant ran and locked himself into someone else's house. The court found that the search of the house resulting in the Defendant's arrest for marijuana possession was valid. The court rejected the defense argument pursuant to *State v. Hayes*, 190 S.W.3d 665 (Tenn. Crim. App. 2005), that although the exclusionary rule did not apply generally to revocation proceedings, it should apply in this case because the evidence was obtained through police harassment or in a particularly offensive manner. The court found that Officer Fielden's pat-down of the Defendant was based upon reasonable, articulable suspicion. The court revoked the Defendant's probation and ordered him to serve his sentences. This appeal followed.

# I

The State contends that the appeal should be dismissed because the notice of appeal was not timely filed. *See* T.R.A.P. 4(a) (providing that a notice of appeal shall be filed within thirty days of the entry of judgment). The Defendant has not responded.

The record reflects that the trial court filed its orders revoking the Defendant's probation on March 12, 2012. The Defendant's pro se notice of appeal was filed on April 16, 2012, and listed his address at a state prison. The certificate of service was not completed or dated. The State acknowledges the "prison mailbox rule" providing that papers filed under the Rules of Criminal Procedure by incarcerated pro se litigants may be considered filed within the prescribed time if delivered to the appropriate prison authority for mailing within the time allowed for filing but argues that it should not apply given the blank certificate of service. *See* Tenn. R. Crim. P. 49(d) (prison mailbox rule). The record reflects that the Defendant was represented by the same appointed counsel at the hearing as represents him in this appeal. There is no order relieving counsel after the hearing in the record, nor does the record contain a notice of appeal filed by counsel.

An attorney who fails to perfect a timely appeal from the entry of a judgment places his client's appeal in peril of dismissal. *See* T.R.A.P. 4(a). However, Rule 4(a) provides that the notice of appeal "is not jurisdictional and the filing of such document may be waived in the interest of justice." *Id*. "In determining whether waiver is appropriate, this Court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, slip op. at 2 (Tenn. Crim. App. Dec. 27, 2005). Upon consideration, we conclude that despite counsel's failure to perfect a timely appeal or to file a reply brief addressing the State's waiver argument, the filing of the notice of appeal should be waived in the interest of justice.

# II

The Defendant contends that the trial court should have suppressed Officer Fielden's testimony about the Defendant's marijuana possession. He argues that despite the general inapplicability of the exclusionary rule to probation revocation hearings, the rule should have applied to his case because Officer Fielden's pat-down of him was based upon the officer's knowledge that the Defendant was a probationer, not the Defendant's activities. The State counters that the trial court properly considered the evidence because Officer Fielden's testimony, which was credited by the trial court, provided a sufficient factual basis for the pat-down that resulted in the discovery of marijuana. We agree with the State.

The Defendant relies on *State v. Hayes*, 190 S.W.3d 665, 670-71 (Tenn. Crim. App. 2005), which concludes that although the exclusionary rule does not apply generally to revocation proceedings, it applies if the evidence is obtained through police harassment or in a particularly offensive manner. Before any consideration of the *Hayes* exception, we will determine whether the evidence was unlawfully discovered.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which we review de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "article 1, section 7 of the Tennessee Constitution is identical in intent and purpose with the Fourth Amendment." *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (citation omitted). In *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006), our supreme court outlined the three types of encounters between the authorities and citizens and defined the applicable legal standard for each:

> Not all contact between police officers and citizens involves the seizure of a person under the Fourth Amendment of the United States Constitution or Article I, section 7 of the Tennessee Constitution. Courts have recognized three distinct types of police-citizen interactions: (1) a full scale arrest which must be supported by probable cause, *see United States v. Watson*, 423 U.S. 411, 424, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976); (2) a brief investigatory detention which must be supported by reasonable suspicion of criminal activity, *see Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); and (3) a brief "consensual" police-citizen encounter which requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). This last category includes community caretaking or public safety functions. *See Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973); *State v. Hawkins*, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997).

Reasonable suspicion, the standard applicable here, "is a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]" *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000) (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). It is determined based upon the totality of the circumstances of the encounter. *Id.* (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). Generally, an officer's subjective intent for conducting an arrest, search, or seizure is not determinative of its lawfulness. *See, e.g.*, *State v. Johnson*, 980 S.W.2d 414, 423 (Tenn. Crim. App. 1998) (citing *Whren v. United States*, 517 U.S. 806 (1996)); *State v. Vineyard*, 958 S.W.2d 730, 736 (Tenn. 1997).

The record reflects that the Defendant was impeding the flow of traffic, in violation of a city ordinance, for which Officer Fielden could lawfully stop him. The officer testified that the Defendant was standing on the corner of the sidewalk, that others were walking on the sidewalk, that daytime foot traffic was typical in the neighborhood, and that a car was stopped beside the sidewalk.

Once an officer stops a suspect, the officer is permitted to conduct a protective frisk if the officer has "'reasonable, particularized suspicion that the suspect is armed.'" *State v. Williamson*, 368 S.W.3d 468, 474 (Tenn. 2012) (quoting *State v. Bridges*, 963 S.W.2d 487, 493 (Tenn. 1997)). This search is authorized to allow the officer to pursue his or her investigation without fear of violence, rather than to uncover evidence of criminal activity. *Id.* (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972); *Bridges*, 963 S.W.2d at 493).

Officer Fielden knew that the Defendant was on probation for a robbery offense, that the Defendant associated with a criminal street gang, and that he had been involved in multiple recent interactions with the Defendant. Officer Fielden's recent interactions with the Defendant included arresting him for the underlying offenses and seizing drugs and a firearm from a house the Defendant frequented. The house was by the sidewalk where the Defendant was standing on the day of the pat-down search. Officer Fielden had reasonable suspicion to conduct a pat-down search of the Defendant for his own safety. While conducting the pat-down for weapons, he felt two individually wrapped bags in the Defendant's pocket. Officer Fielden said he looked down and was able to see the marijuana in the Defendant's open cargo pants pocket. The pat-down was a permissible protective frisk, during which Officer Fielden recognized the marijuana. There was no illegal search.

Because the search did not violate the Defendant's right to be free of unreasonable searches and seizures, the Defendant cannot prevail on his claim that the exclusionary rule should apply to his case. We also note the absence of any evidence that the police harassed the Defendant or obtained the evidence in a particularly offensive manner. *See Hayes*, 190 S.W.3d at 670-71.

# III

The Defendant contends that the trial court erred in concluding that he violated his probation by evading arrest and that had the court not relied on this erroneous finding, it might have ordered a less drastic alternative than requiring the Defendant to serve his sentence. The State concedes that the State did not establish a violation of the evading arrest statute but argues that the trial court properly relied upon the Defendant's multiple violations of probation rules in ordering the Defendant to serve his sentence. We agree with the State.

The trial court found that the Defendant committed the offense of evading arrest. As the Defendant argues and the State aptly concedes, the record does not establish a violation of the statute because Officer Peaker was not attempting to arrest the Defendant when the Defendant fled from him, nor was the Defendant under arrest when he fled. *See* T.C.A. § 39-16-603(a)(1) (2010).

The question becomes whether the trial court erred in revoking the Defendant's probation. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2010); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001).

In addition to its erroneous finding that the Defendant evaded arrest, the trial court found that the Defendant (1) failed to report to his probation officer, despite two home visits by the probation officer, (2) tested positive for marijuana, (3) failed to give a DNA specimen, and (4) violated the law by committing the offenses of criminal trespass and failure to appear. The record provides substantial evidence to support the trial court's conclusion that the Defendant violated the terms of his probation. These multiple violations establish the Defendant's flagrant disregard of the probation terms and his unsuitability for a further reprieve. The trial court did not abuse its discretion in ordering him to serve his sentence.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE